PAUL KELLY, Jr., Circuit Judge,
concurring in part and dissenting in part.
I agree with the Court that use of the income forecast method is not limited to films and similar property, but rather may include “any property,” I.R.C. § 168(f)(1), including rent-to-own inventory.
I disagree with the Court that the phrase “properly depreciated under ... any method of depreciation not expressed in a term of years,” I.R.C. § 168(f)(1)(B), incorporates the requirements of I.R.C. §§ 167(b) and (c) (1988). Although the depreciation deduction under the income forecast method would be subject to the general rule of I.R.C. § 167(a), see Newark Morning Ledger Co. v. United States, 507 U.S. 546, 553, 113 S.Ct. 1670, 1674, 123 L.Ed.2d 288 (1993) (discussing § 167(a)), I doubt that the limitations of I.R.C. §§ 167(b) and (c) (1988) apply. These limitations, as interpreted by the Court, would preclude use of the income forecast method if the depreciation allowance exceeded that under the double-declining balance method during the first two-thirds of the property’s useful life or the property had a useful life of less than three years. Section 168(f) does not cross-reference these provisions and nothing in any legislative history even remotely suggests that they apply. To the contrary, § 168(f)(1) is broadly worded to apply to “any property” that is “properly depreciated” under an alternative method. Moreover, the legislative history suggests that Congress did not intend it to be difficult for tangible property to fall under § 168(f)(1). See H.R. Conf. Rep. No. 841, 99th Cong., 2d Sess. 11-40 (1986), reprinted in 1986 U.S.C.C.A.N. 4075, 4128 (“As under present law, property which the taxpayer properly elects to depreciate under the unit-of-production method or any other method not expressed in terms of years ... will be so depreciated.”).
Problems abound with the court’s restrictive approach. First, if the limitations contained in I.R.C. §§ 167(b) and (c) (1988) were integral to the application of § 168(f), it seems very unlikely that these limitations would have been stricken from the Code in 1990 as “obsolete provisions” while § 168(f)(1) survived. See Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101-508, § 11,812, 104 Stat. 1388-534. While the Treasury Regulations still contain provisions tracking these subsections, Treas. Reg. §§ 1.167(b)-4 and 1.167(c) — 1, these dated regulations are firmly tied to the now obsolete subsections and were enacted long before § 168(f)(1) and its predecessor § 168(e)(2). Although it is true that we must look at the Code as it existed for the tax years at issue, we cannot ignore that Congress retained § 168(f)(1) while deleting *403 §§ 167(b) and (c), ostensibly critical provisions which define “properly depreciated” under § 168(f)(1). The court’s answer to this obvious problem is that “[i]t may be that ‘properly depreciated’ in § 168(f)(1) means properly depreciated under § 167 as amended rather than as it existed before the 1990 amendment.” Ct. Op. at 399-400 n. 5. It is far more likely that §§ 167(b) and (c) do not apply, and that Congress would not tinker with the meaning of “properly depreciated” in such an odd and inadvertent manner. Second, while we may look at related statutes for interpretive help, here a statute no longer in existence and its accompanying regulations are being consulted to provide quantitative benchmarks for the phrase “properly depreciated.” Nothing in any legislative or administrative history suggests that the phrase “properly depreciated,” as used in the provision allowing exit from § 168 and MACES, should be restricted in accordance with the narrowest meaning of “reasonable allowance” under §§ 167(b)(4) and (e) (1988). Third, incorporating these obsolete subsections as a further condition on use of the income forecast method seems beyond judicial interpretation and within the legislative and administrative spheres. While we are obligated to reject the Commissioner’s positions that are without support in the law,
Congress has delegated to the Commissioner, not to the courts, the task of prescribing, “all needful rules and regulations for the enforcement” of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, “it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.”
United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 449-50, 19 L.Ed.2d 537 (1967) (quoting Commissioner v. Stidger, 386 U.S. 287, 296, 87 S.Ct. 1065, 1071, 18 L.Ed.2d 53 (1967)). See also Treas. Reg. §§ 301.7805-1(a); 601.601(a). Finally, neither party cited these obsolete subsections, let alone suggested that they applied — we are without the Commissioner’s views, which we must consider, and those of the taxpayers. For these reasons, I respectfully dissent from that portion of the judgment remanding for an inquiry under I.R.C. §§ 167(b)(4) and (c) (1988). I would simply reverse.